UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LOUIMARD LOUISSAINT,

    Plaintiff,

-vs-                                            Case No. 6:04-cv-1631-Orl-18JGG

WESTMINSTER COMMUNITY CARE
SERVICES, INC., d/b/a Westminster Care
of Clermont,

    Defendant.

## ORDER

THIS CAUSE comes before the Court upon Defendant Westminster Community Care Services, Inc., d/b/a Westminster Care of Clermont's ("WCC") Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 25, filed August 18, 2006) to which Plaintiff Louimard Louissaint ("Plaintiff") responded in opposition. (Doc. 32-1, filed September 11, 2006.) Plaintiff brings this claim against WCC asserting a total of six counts under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and the Florida Civil Rights Act of 1992, Fla. Stat. §§ 760.01 *et seq.* ("Florida Civil Rights Act"). After reviewing the motions and memoranda provided by each party, the Court grants summary judgment to WCC.

### I. BACKGROUND

Plaintiff, a Haitian male, was employed as a Certified Nursing Assistant ("CNA") by WCC, a nursing home facility in Clermont, Florida. Plaintiff regularly worked from 2:00 p.m.

to 10:30 p.m. On April 28, 2004, approximately two and a half hours into his shift, Plaintiff requested permission to leave the facility so that he could remove a snake from his porch at home. Plaintiff alleges that Violet Christy, an evening nurse, gave him permission to leave and did not expect him to return. WCC, however, alleges that Plaintiff was told to return to work after taking care of the emergency. Gerald Noss ("Noss"), Director of Nursing at WCC, claims that after learning that Plaintiff was leaving, he met Plaintiff at the time clock and informed him that he must return to work as soon as he dealt with his personal emergency. According to Wayne Franke ("Franke"), the evening Nursing Supervisor at WCC, at the start of his shift at 6:00 p.m. on April 28, 2004, Franke was told by staff and the charge nurse that Plaintiff had not returned to work. Franke called Plaintiff's home twice to find out when he was returning to work, but both times there was no answer. According to Franke, at no time did Plaintiff call the facility to say he was not returning to complete his shift.

Plaintiff was not scheduled to work on April 29, 2004. Plaintiff alleges that on April 30, 2004, he arrived at work and punched his time card at 2:21 p.m., but was informed that he was no longer on the schedule and that he should report to Noss.[1] According to Plaintiff, it was at this time that Noss advised Plaintiff that he had been terminated for job abandonment. The termination form, signed by Noss and dated April 30, 2004, states that the reasons for termination were that Plaintiff "Quit w/no notice" and "Attendance." (Doc. 32-2.) The termination form also states that Plaintiff was told by Noss to return to work after he left his

---

[1] WCC, however, alleges that Plaintiff did not report to work on his next two scheduled days and that Noss did not see Plaintiff until May 3, 2004.

assignment but that Plaintiff told a nurse he was not coming back. The termination date on the form is April 29, 2004.

Plaintiff further alleges that before his termination he had routinely worked overtime for WCC and that WCC had encouraged employees to sign up for overtime. Plaintiff alleges that in the month preceding his termination, Noss advised Plaintiff that he could no longer work overtime and referred to him as "damn water people." (Doc. 32-1 at 6.) After Plaintiff complained that the comment was discriminatory, Noss allegedly responded by telling Plaintiff that he did not even know "how to speak English so how can he know his rights." (Id.)

On June 9, 2004, Plaintiff filed a claim with the U.S. Equal Employment Opportunity Commission ("EEOC"). The EEOC issued its Dismissal and Notice of Rights on August 18, 2004. Plaintiff subsequently initiated this action against WCC. (Doc. 1-1, filed November 8, 2004.)

## II. ANALYSIS

### A. Summary Judgment Standard

A court will grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)); see, e.g., Stachel v. City of Cape Canaveral, 51 F. Supp. 2d 1326, 1329 (M.D. Fla. 1999). Material facts are those that may affect the outcome of the case under the applicable substantive law. Disputed issues of material fact preclude the entry of summary judgment, but factual disputes that are irrelevant or unnecessary do not. Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the initial burden of proving that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 324-25 (1986). In determining whether the moving party has satisfied its burden, the Court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). The moving party may rely solely on the pleadings to satisfy its burden. Celotex, 477 U.S. at 323-24. A non-moving party bearing the burden of proof, however, must go beyond the pleadings and submit affidavits, depositions, answers to interrogatories, or admissions that designate specific facts indicating there is a genuine issue for trial. Id. at 324. If the evidence offered by the non-moving party is merely colorable, or is not significantly probative, the Court may grant summary judgment. Anderson, 477 U.S. at 249-50. Similarly, summary judgment is mandated against a party who fails to prove an essential element of its case. Celotex, 477 U.S. at 322.

B. *Discriminatory Termination under Title VII and the Florida Civil Rights Act*[2]

Plaintiff claims that he suffered discriminatory termination motivated by racial and national origin animus. (Doc. 1-1 at 5-6.) Plaintiff contends that there is direct evidence of discriminatory disparate treatment because he alleges that Noss referred to Plaintiff as "water people" and told him he did not even know "how to speak English so how can he know his

---

[2] This Court will consider Plaintiff's claims under both Title VII and the Florida Civil Rights Act using the same analysis because "the Florida act was patterned after Title VII" and "[n]o Florida court has interpreted the Florida statute to impose substantive liability where Title VII does not." Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir. 1998).

rights." (Doc. 32-1 at 6.) Direct evidence of discrimination is "evidence which reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." Damon v. Fleming Supermarkets of Fla., Inc. 196 F.3d 1354, 1358 (11th Cir. 1999) (internal quotation marks omitted). It is "evidence, that, if believed, proves the existence of a fact in issue without inference or presumption." Rojas v. Florida, 285 F.3d 1339, 1342 n.2 (11th Cir. 2002) (citation omitted). In the present case, the statements allegedly made by Noss do not constitute direct evidence that Plaintiff was terminated because of his race or national origin.

Absent direct evidence of discrimination, the plaintiff may prove intentional discrimination through the familiar McDonnell Douglas three-step burden-shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). The initial burden is on the plaintiff to establish that: (1) he is a member of a protected class; (2) he was subjected to adverse employment action; (3) his employer treated similarly situated employees who are not members of his class more favorably; and (4) he was qualified for the job. Rice-Lamar v. City of Ft. Lauderdale, 232 F.3d 836, 842-43 (11th Cir. 2000). If the plaintiff establishes a *prima facie* case of discrimination, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas, 411 U.S. at 802. "If this is accomplished, the plaintiff may then attempt to demonstrate that the proffered reason was in fact merely a pretext for the defendant's actions." Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1258 (11th Cir. 2001). Thus, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff

remains at all times with the plaintiff." Id. (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). If the plaintiff fails to create a genuine issue of material fact on the question of whether the defendant's proffered reasons for termination were pretext, the defendant is entitled to summary judgment. Rojas, 285 F.3d at 1344.

Plaintiff must first establish a *prima facie* case. WCC acknowledges that Plaintiff is a member of a protected class and assumes, for purposes of this motion, that Plaintiff is qualified to perform his job as a CNA. (Doc. 25 at 5-6.) WCC also agrees that Plaintiff suffered an adverse employment action when he was terminated on April 29, 2004. (Id. at 5.) However, WCC contends that Plaintiff has not presented any evidence that similarly situated non-Haitian employees were treated more favorably. "To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the employees are similarly situated in all relevant respects." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). This analysis requires a determination of "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Id. In the present case, Plaintiff has failed to demonstrate that any non-Haitian employees who impermissibly failed to return to the facility to complete their shifts were not terminated.

Even if Plaintiff had established a *prima facie* case, WCC is still entitled to summary judgment because WCC has presented a legitimate, nondiscriminatory reason for terminating Plaintiff. WCC's "intermediate burden is 'exceedingly light.'" Id. at 1564 (quoting Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1061 (11th Cir. 1994)). Thus, to comply with Title VII, WCC "may fire an employee for a good reason, a bad reason, a reason based on erroneous facts,

or for no reason at all, as long as its action is not for a discriminatory reason." Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1187 (11th Cir. 1984). Courts "are not in the business of adjudging whether employment decisions are prudent or fair," but rather, their "sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." Damon, 196 F.3d at 1361. WCC has articulated that it terminated Plaintiff because he failed to return to work on April 28, 2004 and did not return phone calls from the facility. While Plaintiff alleges that he had permission to leave work and not return on April 28, 2004, WCC alleges that Noss and Franke, Plaintiff's supervisors, expected Plaintiff to return and made several phone calls trying to contact him. For this reason, WCC viewed Plaintiff's actions on April 28, 2004 as job abandonment and it is irrelevant whether Plaintiff believed he had permission not to return and complete his shift, so long as WCC's reason for termination was not discriminatory. Thus, WCC has met its burden of demonstrating a legitimate, nondiscriminatory reason for terminating Plaintiff.

Plaintiff has the opportunity to demonstrate that WCC's articulated reason for termination is a "mere pretext for discrimination." Holifield, 115 F.3d at 1565. In other words, "the ultimate issue in the case becomes whether the plaintiff has proven that the employer intentionally discriminated against him because of his race [or national origin]." Id. This inquiry "centers upon the employer's beliefs, and not the employee's own perceptions of his performance." Id. Indeed, "[t]he factual issue to be resolved is not the wisdom or accuracy of [defendant's] conclusion that [plaintiff] was an unsatisfactory employee," but "[l]ike all Title VII cases where pretext is an issue, the question the factfinder must answer is whether [the

defendant's] proffered reasons were a coverup for a . . . discriminatory decision." Rojas, 285 F.3d at 1342 (internal quotation marks omitted). In Rojas, the court held that "an isolated comment, unrelated to the decision to fire [the plaintiff] . . . alone, is insufficient to establish a material fact on pretext." Id. at 1343. In the present case, the only evidence presented by Plaintiff is his own assertion that Noss allegedly referred to him as "water people" and told him he could not even speak English so he could not know his rights. (Louissaint Aff. ¶ 6-7.) WCC has presented evidence demonstrating that Plaintiff was told to return to work and that phone calls were made to his home after his delay in returning. (Doc. 26-8; 26-9.) In addition, Plaintiff's time sheet indicates that he in fact did not return to work on April 28, 2004.[3] (Doc. 26-12.) While Plaintiff insists that he had permission to not return to work on April 28, 2004, "assertions of his own good performance are insufficient to defeat summary judgment, in the absence of other evidence." Holifield, 115 F.3d at 1565. The Eleventh Circuit has stated that "[j]udges are responsible for drawing the lines on what evidence is sufficient to create an issue on pretext." Rojas, 285 F.3d at 1344. In this case, Plaintiff has not produced any evidence to support his allegations that he was given permission not to return to work and has failed to create a genuine issue of material fact as to whether WCC's reasons for his termination were pretext. Accordingly, WCC is entitled to summary judgment on the discriminatory termination claim.

---

[3] It is disputed whether Plaintiff showed up and clocked in on his next scheduled work day, April 30, 2004. (Doc. 25 at 3; Doc. 32 at 2). However, this is not a material fact because WCC has asserted that it already had a legitimate, nondiscriminatory reason for terminating Plaintiff after he abandoned his shift on April 28, 2004.

*C. Hostile Work Environment under Title VII and the Florida Civil Rights Act*

Plaintiff alleges that he "had to endure a hostile, discriminatory work environment due to his race and national origin" and that "racial comments and slurs were sufficiently severe or pervasive so as to alter the conditions of Plaintiff's employment and create an abusive working environment." (Doc. 1-1 at 4-5.) In order to establish a hostile work environment claim, the plaintiff must demonstrate

> (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002). To demonstrate that the harassment was "sufficiently severe or pervasive," a plaintiff must establish both subjective and objective components. Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999). "The employee must 'subjectively perceive' the harassment as sufficiently severe and pervasive to alter the terms or conditions of the employment, and this subjective perception must be objectively reasonable." Id. (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993)). In determining whether harassment objectively altered an employee's terms or conditions of employment, the Supreme Court has identified four factors that should be considered: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Id. Moreover, the Supreme

Court has stated that "mere utterance of an . . . epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII." Harris, 510 U.S. at 21 (citation and internal quotation marks omitted).

Plaintiff alleges that Noss referred to him as "water people" and told Plaintiff that he did not even know "how to speak English so how can he know his rights." (Doc. 32-1 at 6.) Plaintiff further alleges that a month before his termination, WCC refused to allow him to sign up for overtime. (Id.) Plaintiff's allegations in the present case simply do not establish that he was subjected to conduct severe or pervasive enough to establish a hostile work environment claim. Plaintiff's allegations do not demonstrate that any alleged harassment by Noss was sufficiently frequent, severe, or humiliating, or that it interfered with Plaintiff's job performance. Plaintiff actually only alleges a one-time epithet, not rising to the level required in order to implicate Title VII. Thus, Plaintiff's allegations are insufficient to create a genuine issue of material fact as to whether the alleged harassment was sufficiently severe or pervasive to alter the conditions of his employment. Accordingly, WCC is entitled to summary judgment on the hostile work environment claim.

## III. CONCLUSION

For the foregoing reasons, WCC's Motion for Summary Judgment is **GRANTED**. The Clerk of the Court is directed to **ENTER JUDGMENT** on behalf of Defendant WCC and **CLOSE THE CASE**.

**DONE** and **ORDERED** in Orlando, Florida on this ___7___ day of November, 2006.

                                        G. KENDALL SHARP
                                        SENIOR UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties